UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| MARY SUE PHIPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:04-CV-564 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of plaintiff's motion for summary judgment [Doc. 12] and the defendant's motion for summary judgment. [Doc. 17]. Plaintiff Mary Sue Phipps seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

>1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
>2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to perform light work which entails lifting/carrying 20 pounds on an occasional basis and 10 pounds on a frequent basis with no frequent bending, stooping or squatting and no frequent use of foot controls. She is able to stand, walk and/or sit about 6 hours during an 8-hour day with a sit/stand option for comfort. She is to avoid excessive vibration, excessive stress, excessive exposure to dust, smoke fumes and noxious gases. She is unable to be around heights and moving machinery. She is precluded from jobs requiring frequent overhead motions. She is precluded from any work requiring more than simple instructions. These findings are supported by the opinions of the State Agency medical consultants. As those of nonexamining physicians, their opinions are not entitled to controlling weight but must be considered and weighed as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. The residual functional capacity for light work is also consistent with the findings of the consulting examiner, Jeffrey

Summers (Exhibit 14F).

8. The claimant is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 C.F.R. §§ 404.1563 and 416.963).

10. The claimant has "a limited education" (20 C.F.R. §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 416.967).

13. Although the claimant's limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decisionmaking, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as ticket taker. At the light level of exertion, there are 100 in the Knoxville metropolitan area and 32,250 in the national economy: Inspector: At the light level of exertion, there are 900 such jobs in the Knoxville metropolitan area and 273,000 in the national economy; Greeter: At the light level of exertion, there are 145 such jobs in the Knoxville metropolitan area and 52,200 in the national economy. At the sedentary level of exertion, there are the jobs of folder, assembler and inspector. There are 695 such jobs in the Knoxville Metropolitan area and 255,700 such jobs in the national economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 26-27).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g). See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet, 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

First, plaintiff argues that the ALJ failed to consider her diagnosis of polycystic ovarian syndrome ("PCOS"), listing among her symptoms infrequent or no menstrual periods, infertility, increased growth of hair, acne, weight gain or obesity, Type II diabetes, and sleep apnea. Plaintiff maintains that in his credibility determination the ALJ did not consider that her complaints were consistent with the diagnosis of PCOS and failed to consider her symptoms either singly or together. However, the Commissioner argues that the issue is not a diagnosis of a condition, but the impact of plaintiff's condition on her ability to work. She maintains that the ALJ found plaintiff not disabled because her test results were mild and because she required only conservative care, noting that Dr. Thomas, who diagnosed PCOS, prescribed medication, and in

4

April 2002 stated that plaintiff needed only to continue taking her medication, as her menstrual difficulties "responded well" to medication. (Tr. 24, 554, 633, 761, 776).

Next, plaintiff contends that the ALJ failed to consider her impairments in combination. She insists that many of them result from her PCOS and argues that she also has back pain, multiple recurrent earaches, colds and bronchitis, migraines, and poor eyesight. She maintains that this combination of impairments keeps her in and out of the emergency room and the doctors' offices. However, the Commissioner argues that the ALJ explained that he reviewed "all of the evidence of record" and considered the "the entire record," summarized the medical evidence as well as plaintiff's testimony, considered both her physical and mental restrictions in forming his residual functional capacity ("RFC") finding, and included all her credible limitations in the hypothetical question posed to the vocational expert ("VE"). (Tr. 20-26, 651-64). Moreover, the Commissioner points out that the ALJ noted that plaintiff had "an impairment or a combination of impairments" considered severe at step two (Tr. 26, Finding Number 3); that her "impairments" did not meet or equal one of the listed "impairments" (Tr. 26, Finding Number 4); that he "carefully considered all of the medical opinions in the record" (Tr. 26, Finding Number 6); and that he included a variety of restrictions in her RFC, including lifting/carrying, walking/standing/sitting, bending, stooping, squatting, use of foot controls, vibration, stress, dust, smoke fumes, noxious gases, heights, moving machinery, overhead motion, and simple instructions. (Tr. 26-27, Finding Number 7). In light of the foregoing, the Commissioner maintains that the ALJ considered all of plaintiff's impairments in combination.

Plaintiff next asserts that the ALJ erred in his evaluation of her weight. She contends that the ALJ "displayed his feelings about weight gain by typing in bold the words 'the

5

tremendous need for the claimant to lose weight.'" (Tr. 24). Plaintiff contends that weight is a symptom of PCOS, noting that she has tried to lose weight but would lose a few pounds only to gain it back. Further, she contends that there is no prescribed treatment by a treating source, and therefore, her failure to lose weight cannot be considered a failure to follow prescribed treatment. The Commissioner, however, explains that the ALJ was not stating that plaintiff would be denied benefits for failure to follow treating advice. Specifically, his point "was not that it was easy to lose weight but that, if her weight was so severely limiting her ability to breathe, she would have taken Dr. Schmidt's advice that she had a 'tremendous need' to lose weight," noting that the ALJ properly considered plaintiff's weight in his credibility determination because there was an inconsistency between plaintiff's complaints and her lack of affirmatively trying to lose weight. (Tr. 23-24, 724).

Plaintiff further asserts that the ALJ failed to consider her emotional condition, arguing that it was error for the ALJ not to include depression or the existence of post-traumatic stress disorder ("PTSD") in his list of emotional impairments or in the hypothetical. (Tr. 20, 678). However, the Commissioner explains that plaintiff's reference to PTSD is a single notation on a chart by someone other than a physician, arguing that a mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just by a claimant's own statements. (Tr. 678). The Commissioner insists that a more significant reference would be Dr. Dickey's April 2001 treatment note in which he noted plaintiff's early sexual and physical abuse, stating that he "[w]ould consider referral to psychiatry in the future," but did not believe that it was essential that plaintiff receive psychiatric care immediately. Instead, he felt that an appropriate treatment plan would be support systems such as a church

6

affiliation. (Tr. 588-90). Moreover, the Commissioner notes that although Dr. Dickey asked plaintiff to return if her problems continued (Tr. 590), she did not report any psychological problems in May 2001 (Tr. 585) or at either visit in June 2001 (Tr. 569, 572).

Plaintiff next argues that the ALJ failed to consider the eye examination results of Dr. Cross. (Tr. 795, 797). However, the Commissioner maintains that although the ALJ recognized that Dr. Cross was plaintiff's regular optometrist, he also noted that Dr. Cross prescribed eyeglasses and gave plaintiff no vision restrictions, noting that her examination was just a regular examination with a complaint of blurred vision. (Tr. 22, 797). He also noted the consultative examination results of Dr. Nix, who opined that plaintiff's vision impairment was only "slight" and that she should be able to handle all visual tasks with the exception of seeing very fine detail, and the consultative examination of Dr. Summers. (Tr. 21-23, 741-49, 779-86, 795). The Commissioner insists that although the ALJ did not give plaintiff a vision restriction, the jobs identified by the VE, especially the jobs as ticket taker and folder, certainly would not require very fine detail work, and that common sense would indicate that all the jobs identified by the VE could be performed by an individual with only a "slight" vision impairment.

Additionally, plaintiff challenges the ALJ's credibility finding, arguing that the ALJ concluded that she was not credible because she had been told to lose weight and that her MRI scans were mild. However, the Commissioner maintains that the ALJ considered numerous factors in his credibility determination. (Tr. 23). Specifically, although plaintiff claimed disabling vision problems, Dr. Nix opined that plaintiff's vision impairment was only "slight" (Tr. 23, 741); that although plaintiff claimed disabling breathing problems, she was successfully using a CPAP machine (Tr. 24, 665, 724); and that while plaintiff complained of

7

hand weakness and numbness, normal grip strength and manual dexterity were revealed on examination. (Tr. 24, 782). Moreover, the ALJ found that if plaintiff's weight was so severely limiting her ability to breathe, she would have taken Dr. Schmidt's advice that she had a "tremendous need" to lose weight, noting that the ALJ pointed out that there was an inconsistency between plaintiff's complaints and her lack of affirmatively trying to lose weight. (Tr. 23-24, 724). Moreover, the Commissioner notes that the record reflects several examples of plaintiff's failure to comply with her physicians' orders. For example, in April 2001, Dr. Dickey noted that plaintiff was not "taking the recommended medical regimen" for gastritis. (Tr. 588-89). Additionally, in October 2001, Dr. Thomas noted that, although plaintiff's menstrual difficulties "responded well" to medication (Tr. 544, 776), she had not been compliant with her medication for her periods or migraine headaches (Tr. 546, 552, 765), and in January 2002, while she complained to Dr. Thomas that she had not had a period in several months, plaintiff also admitted that she had not taken her medication. (Tr. 670, 764). Furthermore, the Commissioner points out that when plaintiff went for a colonoscopy in March 2002, she did not follow the preparation instructions, and the colonoscopy had to be stopped before it was completed. (Tr. 642). Lastly, the Commissioner maintains that the ALJ found that, although plaintiff complained of disabling back pain, the objective test results were mild. (Tr. 23, 631, 652-53). Therefore, the Commissioner maintains that plaintiff's lack of cooperation with her treating physicians' orders is appropriate for the ALJ's credibility determination.

        Next, plaintiff requests that evidence submitted following the ALJ's decision be considered. Specifically, plaintiff maintains that the report of Dr. Wolfe could not have been submitted before the hearing because it did not exist. Plaintiff concedes that it is "not really new evidence" but maintains that it is material because it most clearly defines her major illness. The

Commissioner contends, however, that this Court may not consider in its substantial evidence review the evidence submitted by plaintiff after the ALJ issued his decision, but may consider it only for the purpose of determining whether remand is appropriate under sentence six of 42 U.S.C. § 405(g). The Commissioner points out that to obtain a sentence six remand, the moving party must show that the evidence is new, that it is material, and that there exists good cause for the failure to have incorporated this evidence in the prior record. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). She points out that except for the evaluation done by Dr. Wolfe immediately after the ALJ's decision, all of the Appeals Council evidence pre-dates the ALJ's decision, and thus, was not new. (Tr. 832-34). Furthermore, she maintains that Dr. Wolfe's evaluation could have been performed before the ALJ's decision because he had been treating the plaintiff for several months.

Plaintiff also contends that the ALJ erred in relying on the VE's testimony because the hypothetical question was incomplete, arguing that the ALJ failed to include limitations based on the typical symptoms of PCOS, failed to include her need for more than two absences per month, and failed to ask if the testimony of the VE was in conflict with the Dictionary of Occupational Titles ("DOT"). However, the Commissioner maintains that the ALJ is not required to include any limitations that he did not accept as credible, namely speculative symptoms that may be typical of PCOS but not established by the record. Moreover, the Commissioner insists that the ALJ did not accept the limitation that plaintiff would require more than two days off a month for either medical appointments or the inability to make it to work. While the Commissioner concedes that plaintiff did see physicians often, she insists that calendar year 2001 is a more relevant time period than that of January 1998 to December 2000 because plaintiff's alleged disability began in December 2001. (Tr. 99). The Commissioner

9

insists that twelve visits in twelve months would have only been one a month and, even at that, would not necessarily have required that she miss work to go to these appointments. With respect to a conflict with the DOT, the Commissioner maintains that plaintiff does not argue that the VE's testimony was in conflict with the DOT or that the jobs specified by the VE could be performed by an individual with those abilities. Plaintiff argues only that the question should have been asked and answered. Although the Commissioner acknowledges that this is true and that the DOT serves as a base for job information, she maintains that it is the expertise of the VE that determines whether jobs are available in the national economy, and therefore, it is unnecessary to remand this case to ask the VE if his testimony was consistent with the DOT.

I find the Commissioner's arguments persuasive. Plaintiff has the responsibility of not just producing a diagnosis of an impairment, but of demonstrating a functional limitation. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988); 20 C.F.R. §§ 404.1512(c), 416.912(c). The ALJ considered plaintiff's PCOS symptoms, but found that her mild test results, conservative treatment, and medication undercut her claims of a disabling impairment. Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir. 1987) (a condition controllable by medication is not disabling). Next, as the Commissioner points out, plaintiff's argument that the ALJ failed to consider her impairments in combination is unpersuasive, as the ALJ referred to plaintiff's "impairments" numerous times. (Tr. 26, Finding Numbers 3, 4, 6) Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 591-92 (6th Cir. 1987) (ALJ considered claimant's impairments in combination where he referred to "a combination of impairments" in finding claimant did not have listing-level impairment and the ALJ referred to the claimant's "impairments" in the plural.).

Furthermore, I agree with the Commissioner regarding the ALJ's credibility

10

Case 3:04-cv-00564   Document 19   Filed 01/23/06   Page 10 of 13   PageID #: 10

determination. Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997) (ALJ's findings based on the credibility of the claimant to be accorded great weight and deference). With regard to plaintiff's weight, the ALJ did not state that plaintiff would be denied benefits for failure to follow treating advice, but rather, as the Commissioner argues, pointed out that if plaintiff's weight severely limited her ability to breathe, then she would have taken Dr. Schmidt's advice that she had a "tremendous need" to lose weight. (Tr. 23-24, 724). Moreover, the single notation of PTSD on a chart and plaintiff's failure to report to Dr. Dickey any psychological problems in May and June 2001 severely undercut plaintiff's claims of disabling psychological impairments. Furthermore, with regard to plaintiff's alleged vision impairment, plaintiff's own optometrist Dr. Cross prescribed glasses and gave plaintiff no vision restrictions and consultative examiner Dr. Nix found plaintiff's vision impairment was only "slight." These inconsistencies, as well as inconsistencies between plaintiff's claims of breathing problems, hand weakness and numbness, and her failure to take her medication as prescribed were appropriately considered by the ALJ in his credibility determination. (Tr. 23-24).

Although plaintiff does not explicitly request a sentence six remand, she requests that this Court consider evidence submitted following the ALJ's decision. However, as the Commissioner points out, this Court cannot in its substantial evidence review consider evidence that was not before the ALJ. See 42 U.S.C. § 405(g). Moreover, to obtain a sentence six remand, plaintiff must demonstrate that the evidence is new, that it is material, and that there exists good cause for the failure to have incorporated this evidence in the prior record. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). As the Commissioner points out, plaintiff does not attempt to make a good cause argument, other than the statement that Dr. Wolfe's evaluation could not have been submitted earlier because it did not exist. However, this reason is not

11

sufficient to meet the good cause requirement for a sentence six remand, especially since Dr. Wolfe had been treating plaintiff and plaintiff could have obtained his evaluation before the ALJ issued his decision. Therefore, having found that the plaintiff fails to satisfy the good cause requirement for remand, I need not address the remaining two requirements of whether the evidence is new and material. Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986).

Lastly, I find no merit to plaintiff's arguments regarding an incomplete hypothetical and the VE's testimony with respect to the DOT. As previously discussed, the ALJ considered plaintiff's PCOS symptoms but did not consider them disabling, and the Commissioner explained that the ALJ did not find credible plaintiff's claim that she would require more than two days off a month for medical appointments or for the inability to make it to work. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987) (ALJ properly considered all of plaintiff's credible limitations and properly relied on VE testimony in response to hypothetical question that accurately reflected those limitations). Therefore, the issue of an incomplete hypothetical is without merit.

The plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p, which provides in pertinent part:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the

12

apparent conflict.

2000 WL 1898704, at *4 (Dec. 4, 2000). As the Commissioner points out, plaintiff does not argue or demonstrate that the VE's testimony was in conflict with the DOT. The transcript from the administrative hearing indicates that the ALJ did not ask the VE whether his testimony was consistent with the DOT. Although this was error, I find the error to be harmless. <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

In light of the foregoing, it is hereby **RECOMMENDED**[1] that the plaintiff's motion for summary judgment [Doc. 12] be **DENIED** and that the defendant's motion for summary judgment [Doc. 17] be **GRANTED**.

          Respectfully submitted,

            s/C. Clifford Shirley, Jr.
          United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).